You may be seated. The clerk will call the next case. 319-0206 Enraged Marriage of Deborah Langeberg of Gatli by Tyler Smith and Lee Langeberg, Appellant by Bradley Valerius. Mr. Valerius, you may proceed. May it please the court, counsel. My name is Bradley Valerius. I'm with the law firm Murphy & Dunn. I represent the appellant, Lee Langeberg, who appeals the lower court's dissolution judgment on three separate grounds. Each one of those grounds by itself is shocking. On the whole, the judgment is so unbalanced as to be almost unconscionable. I want to argue this is the product of hurry and bias in the lower court, resulting in a lack of attention on the stakes. So at the outset, to exemplify the point that the judgment is the result of hurry and bias, I want to cut straight to the heart of what's at issue in two of those items. First, the Kingsbury House, an item of property that is indisputably marital. It's valued at $235,000 with $142,000 in equity. The court took this expensive piece of marital property and gave it to Deborah outright without any countervailing distribution to Lee. The court did this by saying the parties had stipulated to it. Is that true? Stipulated to it being non-marital. Is that true? No, it is not true. There is nowhere in the record a clear and definitive statement by Lee saying, yes, I stipulate that the product is her non-marital property. There is no statement that rises to such a definitive level. In almost any circumstances where the Kingsbury House is addressed, Lee adds, I want the Cummings House. We agreed. She takes that house. I take this house. So the court rushed in seeking to find a stipulation when really, if the court took its time, it would have found there was an attempt at an agreement. And is the only place where the court specifically addresses the contents of the stipulation or what they believe to be? Is that, I think it's supplemental record number six where the court says, it's my understanding that in talking with the attorneys previously that the parties are in agreement, that the pensions of each party will be quadro, that the property that's currently in the possession of each party stay in the possession of that party. Is that the sum total of what the court does to quantify the stipulation? I mean, this goes on a couple more sentences and talks about savings accounts and other items. But at the end it says, is that still agreed upon? And is that all of the writing or the memorialization? The ruling, if you're reporting from the ruling, I believe that's the case. Or I would also add to look at the ruling in which the case handles those matters. Independent of the ruling, I mean, that is evidence of this stipulation in the record. Because obviously there's no writing, correct? Correct. And the parties don't testify to their understanding of the stipulation. That's correct. So is it correct to say that that is really on the record, that that's all, that there is, other than the ruling at the end, prior to the hearing? That's right. There are statements such as you're not making a claim on that house, right? But that's vague language. To a layperson not making a claim, no, I don't want that house. I want this other house. I want to live in this house. She can live in that house. We'll just trade and call it even, even though that house is worth more. Even if we get to, if we say, okay, it was not classified correctly and there wasn't a stipulation about it. Even if we get to that point, if we say, well, it's marital, but because the contributions are all from this inheritance, is there any, I mean, is the ruling itself an abuse of discretion? Even if we found that it wasn't properly classified, but the award itself, I mean, can it stand without that? I don't think so. The house was acquired during the marriage. The parties lived in it together. It was titled in both names. All the evidence points to it being marital. Well, no, and I'm saying even if we said it should have been classified as marital property, the division of it, I mean, that doesn't require that. Well, there's a considerable amount of equity that should have been split the other way. And when was that house purchased? I believe it, I don't know this for certain. I've scanned the record. I think it was around 2016, 2015, 2016. It would have been during the latter years of the marriage, I believe. Thank you. You're welcome. So as I mentioned, that was the first item I want to demonstrate as showing that these results are an example of rush and hurry and maybe even bias, because there was no stipulation, not clearly. The second item regards the court's award. There was no stipulation or there wasn't a clear stipulation. There was no stipulation. There was no clear stipulation either. There either was or wasn't. There was not. Okay. That's your position. Yes. Okay. The other item is the court's award of reimbursement of $90,000 to Deborah, which represents monies she allegedly spent from her separate non-marital property and used towards various marital properties of the couple. So the first thing that should be applied in the case of reimbursement is the presumption that the contribution from a non-marital estate to a marital estate is a gift. But the court didn't even make this analysis. The court just rushed to finding whether or not there was clear and convincing tracing of those monies. And it made its decision based on a summary table composed by Deborah, which itself is not sufficient evidence. So those are the two points I wanted to bring up at the outset just to frame the court's posture. So you're saying the Kingsbury house is marital? Correct. It only became non-marital because the court said the party stipulated to it being so. Did you have a trial where the lease counsel asked Lee if he wanted anything to do with Kingsbury and he said no? He said he didn't want it despite the fact he spent $4,000 on repairs? The attorney asked him, do you want to be awarded all the Cummings? Is that correct? He said that's right. Right. Are you suggesting that Cummings is non-marital? I mean, there seems to be a lot of stuff there. But notice that he also said that, yeah, I want Cummings. He was trying to get at an agreement. I think the court should have understood that his relinquishing any interest in Kingsbury was contingent upon Deborah also relinquishing her interest in Cummings. Well, didn't Lee testify that the Kingsbury house was purchased with Deborah's inheritance, which were non-marital funds? He did, but he also contributed. $4,000? $4,000. Did he get any award of the $4,000? I believe so. Okay, so he got his money back. But still... So why now is it all of a sudden marital? Because it always was marital. They lived in it during the course of the marriage. It was tiled in both names. It was acquired like any other piece of marital property. So you're saying just because somebody testifies she can have that property, that does not mean that you're relinquishing your interest in it in terms of what the marital estate is. That's correct. They're not going to fight over who gets possession of that or whatever you want us to say that she can have it. And that's all, what you're saying is that's all that was meant by the testimony and any purported, how that would have parlayed into a stipulation. Yes, it was $72,000 in equity that he didn't just want to give away. So, we believe this is a case where the court just didn't want to go to trial. The court felt like Lee was unreasonable to insist on doing it after the morning preliminary hearing and became biased against him. It was a short trial by the way. There was hardly any evidence besides testimony and the oral ruling was issued that afternoon. To really appreciate how flawed the ruling is, it's important to remember what it looked like as originally expressed prior to the motion to reconsider. I'm sorry, I misspoke. I meant the judgment, not the ruling. One mistake that the court corrected was stating that the parties stipulate to the value of Cummings being $200,000. The appraised value of that property is only $155,000. There was no stipulation about it. There was no contrary evidence about it. To find otherwise was great and careless. I bring this up because it's not the only instance the court mistakenly tried to fashion a stipulation that wasn't there. Another mistake the court corrected was determining the method by which the $90,000 reimbursement should be paid by Lee. The court ordered the parties first to split the trust account holding the proceeds from the various sales of apartments, and then Lee should pay Deborah $90,000. That's not sensible. Reimbursement should come off the top, not after the proceeds are split. In that case, the result was so unbalanced that Lee didn't just lose everything, he owed money. My point in mentioning these mistakes is to demonstrate that other big mistakes were made in this case. Two of them were corrected in the motion to reconsider, and now we ask that three others be corrected here on appeal. The first item is the one we've already talked much about, the distribution of Kingsbury. As I've stated, it was undisputed to be marital property. No one denies it. It became non-marital only by the court stating the stipulation. He said, we agreed. She kept her house, I kept mine. When he answered, he made no claim. He meant he didn't want to live there. But overall, the court should have taken more time and care to ensure that the parties understood the consequences of a stipulation if it wanted to find one. It should have gotten a clear, definitive statement from Lee. So you understand, you're waiving your rights to $72,000 in equity. You really want to do this. It should have made sure it understood correctly the intentions of the parties. So we believe this result is against the manifest weight of the evidence. It's a mistake that cost Lee $71,000. The second item is another one I've already addressed, the $90,000 reimbursement for alleged investments Deb made from a non-marital property in the marital property. Reimbursement is permitted under Section 503C2A only if the contribution is not a gift to the marital estate. In case law, it presumes the contribution is a gift. The standard to overcome that presumption is clear and convincing evidence that no gift was intended. And that analysis wasn't even given. What little evidence is in the record is not sufficient to rebut the presumption. It looks like Deb was constantly using non-marital funds. She testified she expected to get reimbursed, but subjective expectation by itself doesn't overcome that strong presumption. She might have thought she was going to get money back from improving the value of the properties. She certainly didn't get her promise from Lee. Well, isn't that part of the testimony that at the time that he moved out or she moved out or whatever, where they are no longer living together, that he doesn't do any more with these rental properties. And during their marriage, he did a lot of the work necessary to get them ready to be flipped, to be sold, so that they would move on to the next property. And in just holding them, it's just costing them. So she testified that he wasn't doing it anymore. She had to do something in order so that these houses could be sold. Isn't that her testimony? So that's why she kept the spreadsheet and used this money? To this day, yes. And you're saying that that isn't sufficient? I mean, you know, whether it's believed or not by the trial judges, that's his discretion. He makes that credibility finding, but is there some reason that that is not legally sufficient for him to make that ruling? Well, it doesn't, I don't believe that that would make the items not a gift under those circumstances. What, I guess, if there's no intent to, I mean, what would constitute proof that it wasn't meant to be a gift? An understanding that expenses of so much magnitude were going to be made for the benefit of the marital estate. But, I mean, from the standpoint of, you know, if somebody wants to use some of this inheritance and expect to get paid back, what would constitute, in your mind, what would be proof that there was no gift? Obtaining an understanding that reimbursement would be due. Obtaining oral verification. So, in your opinion, it's something that had to have been discussed between the two parties? Yes. On that same point, the statute allows reimbursement only when the funds are traced and accounted for with clear, convincing, unmistakable evidence. What we have here are mere summary tables showing alleged transactions. There's 150 of them over two years. It's hearsay. I know it was admitted as summary, but still, 150 transactions. The court should have looked closely at it, given scrutiny to every one, made sure it was for a reimbursable purpose. Looked at the receipts to make sure receipts are really there for every transaction that's listed. But, it was rushed to accept everything that day. It hastily accepted the sum shown, minus one payment that had been made for a credit card, and then it arbitrarily award 80% of those fees. Counsel's time. I'm going to try to complete your thought. I don't know if anyone had any questions. That was my final point on that matter. Okay. I don't see any questions, so you do have five minutes for rebuttal at the end. Thank you, Your Honors. Thank you, Mr. Valerius. Mr. Smith. May it please the court, counsel. My name is Tyler Smith, and I represent Deborah Langenberg, the appellee in this case. Your Honors, as is sometimes the case, no lawyer in this room was present in the courtroom when the judgment was handed down. So, perhaps in this case more than any others, we have to rely on the judge's discretion. The only thing that Mr. Murphy's office and myself have been able to rely on is the record, just like you, and what our clients have told us. There are four issues that I would like to raise. Why do we have to rely on the judge's discretion? What's that to do? So, as Your Honor knows... As Your Honor knows, the several issues in this, the standard of... That's different. Yeah, that's the standard of review. Okay, that's what I meant, Your Honor. Yeah, the fact that you weren't there doesn't have anything to do with judge's discretion. I'm speaking mainly towards the allegations of bias, and I won't respond anymore to those allegations. Well, I didn't hear any evidence of bias. And strictly speaking, the trial judge was at a more advantageous position than anyone here to weigh the evidence and to weigh the credibility of... Well, what is the evidence here that Kingsbury is non-memorable? Speaking specifically to Kingsbury... I mean, there's only three issues here, right? Issues, Kingsbury, house, maintenance. Yes, Your Honor, the appellant raises three issues. Right, okay. The evidence that Kingsbury is non-merital is that it doesn't matter that Kingsbury is not in dispute. The judge... I mean, I guess two points. And I ask this, you're hilarious, but from the standpoint of where you start, where you say, you know, you're defining the state, marital or non-marital property, this is a home purchased during the marriage with both names on title. And from that standpoint, does it start out as marital property, as its classification? Now, what happens to it, or what's traced back or reimbursed? But it's my understanding that this is initially defined as non-marital property. Initially defined... I mean, excuse me, that it was initially defined as non-marital property from the get-go. That is my understanding as well, Your Honor. Essentially, what happened was, at the beginning of the trial, the judge read a list of what was in dispute. He specifically named several properties, rental properties mostly. He also specifically named the Cummings property. He said, I quote, and that leaves matter issues that would be... And then he listed several matters that were still in dispute. And then continued with four addresses commonly known as Cummings address, Main address, Chem address, and Kenwood address. Kingsbury was not named. So you think the statement that the property that's currently in the possession of each party, stay in the possession of that party, constitutes a stipulation, A, that this Kingsbury property is non-marital, and that she gets it without any, you know, that he wastes any rights or interest at all in that property? The statement by the judge that... Yes, that there is nothing in writing. I interpreted that statement to be the chattel, Your Honor. The property that was currently in the possession of each party at trial was, I believe she was living at Kingsbury and he was living at Cummings. He was awarded possession of Cummings at trial. He was unable to buy her interest out of Cummings. Kingsbury was ruled non-marital based on stipulation. But where is that stipulation? So that's the difficult, tricky question. At the beginning of trial, like I said, the judge said that there had been some agreement and it was not on the record. I concede that. That's obvious. However, he does outline what is in dispute and what is not named specifically is Kingsbury. He then turned to both Mr. Lynch and... But it's also not specifically mentioned as being stipulated, too, that there's a finding that this is the wife's non-marital property and she's awarded this by stipulation separate from any interest of the husband either. I mean... I agree, Your Honor. It's the tricky question. I'm not saying that this is a flawless judgment of trial proceeding, but it does seem to indicate throughout the trial... So neither one of your firms were the trial attorneys? I'm sorry, did you repeat the question, Your Honor? Neither one of your firms were the trial attorneys? I don't believe Murphy's office was. My office, Mr. Lynch came of counsel. I don't know if he litigated it while he was of counsel and then he passed away. But while he was at our firm, I don't know if he litigated it. So you don't know who the trial counsel was? The trial counsel was David Lynch and a man by the name of Morris. And that was Lee Zetine. And so we're in the situation that we're trying to piece things together based on, like I said, the record. And what I see based on the trial transcript is Lee consistently referring to the Kingsbury address as her house. And consistently referring to the Cummings address as that property. He could have easily said my house, my property. Mr. Murphy's office has made a lot of the argument that, well, the agreement actually was they wanted the possession awarded. That Kingsbury goes to her and Cummings goes to her and then we balance it out at the end. But I don't find a lot of evidence for that as much as I do that Kingsbury was just agreed non-marital. I don't know that it's illogical for that to happen when going into this case, Lee and his attorney would understand that they didn't have a case against Kingsbury and it would have been spurious to make such. Dave Lynch in the trial transcript raises the issue of who owns Kingsbury for the purpose of getting out exactly a reimbursement question as to how much did Mr. Langberg contribute. And it was found 4,000 was contributed. I believe that he was awarded the reimbursement for that contribution. And so going based off of Lee's attorney statements, Lee's statements during trial, the fact that the judge at the onset said essentially he didn't. He said the opposite. He said he said what properties were in dispute and didn't name Kingsbury. Both parties agreed to that. I read this as something happened with Kingsbury. Something happened enough that David Lynch did not introduce evidence that yes, Kingsbury was titled in both parties names. And here's why it wasn't meant as a gift. And this is evidence that he would have entered had it not been agreed to. But he didn't make any attempt to do that because it wasn't in dispute. It was just not in dispute. And that's kind of what we go by from the words of the judge and then the finding. I don't know why the judge found. I think a lot of this seems to be based on the fact that, you know, Lee says it's her house or whatever. It's very common in matrimonial law that people say, oh, well, that's her car or that's my pension. When those are, you know, sort of common terms that people use. But the legal aspect of those might be something, you know, obviously when you get married, there's not much my left, especially in property division. So I don't know that just using those phrases is enough to say, oh, yes, everyone understood what the stipulation meant. Especially because there doesn't appear to be any clear idea of what was or was not part of this, what they were stipulating to. Was it marital property? Was it non-marital property subject to reimbursement for his contribution or just what? So my response to that is I agree. It's not dispositive. Him saying that it's her house is not dispositive. Taken as a whole, the argument is that there was some kind of agreement there. And that agreement was that Kingsbury is not in dispute. It's not it's not on the table. And I think that if this court finds that every agreement has to be written down, I think that family court cases will become clear. Yes, I agree. But also there's a lot of court cases, family cases. So, I mean, we have to work through things quickly. As a policy matter, I agree with your honor, but that's just kind of the world we live in. There's not just enough judges and lawyers. Doesn't the trial court and also counsel have an obligation to protect the record and really be careful about reciting basis for rulings? And I think that's what you're struggling with here. Yes, opposing counsel is to that. Nobody, the lawyers, the judge, nobody protected the record here. I agree with your honor. As far as the other two issues, we have maintenance. Your honors have any other questions about Kingsbury? I think you understand my position on it. Maintenance awards are clearly within the sound discretion of the trial court. It is encouraged but not required that the trial court make specific factual findings based on the statute. However, this is not necessary when there's clear factual basis in the record for a maintenance award. And I think that's the case here. The judge awarded maintenance based on pursuant, quote, pursuant statutory guidelines. The record contains a lot of evidence that would go both for and against both parties. And the judge made the award of maintenance based on that. Lee had substantial income during the marriage, $80,000 roughly in the year prior. Deborah had no income at the time of trial. The parties had an above average lifestyle. They owned rental properties. They had multiple cars. Deborah had questionable health. Lee may have a downturn in work. Deborah was involuntarily fired from Caterpillar years ago. All of this is what the judge considered when he made the award of maintenance. And it's reviewable maintenance? It's reviewable maintenance. That's correct. So I think that Murphy's office's arguments are all appropriately, should all be appropriately addressed in the motion to modify, which they have filed already. Not as an appealable award. I think that it's within the sound expression of the court based on the record evidence to award maintenance. And I believe that this court should affirm it. The court also decided not to impute income to Deborah. At the time of trial, she had been involuntarily laid off from her last job. It was a temporary job where she was laid off after the period that the employer wanted it to end. The employer wanted to hire a person to replace her that had a college degree. She had had a couple jobs prior to that. At some point, she had had a pretty consistent job with Caterpillar. Murphy's office made a lot to do in the motion drafting. Nothing was said today, but I'll address it now. She was fired, but she has a clean work history there. The testimony that was presented at trial regarding the firing at Caterpillar was mixed. And none of it was presented by my client, Dave Lynch. The expert manager that had come in from Caterpillar said that she needed help after she had been injured. She was in full capacity, but she had a huge bruise on her face. The picture test evidence was submitted. I don't know that we even go back to when we do an imputation. We go back to that several jobs prior. We go back, I believe, to the last prior job, which was the temporary job. Again, her maintenance is based on a requirement that she continues to make efforts to find employment. That is the purview of a motion to modify. If Lee doesn't believe that she's made these efforts, file a motion to modify and we'll deal with it at the trial level. This award and this decision not to impute income, it's not outside of the sound discretion of the trial court. It was made with sound discretion. And it ends at the expert, if everything else remains the same, at the end of eight years, ten months. That's correct, Your Honor. It is time limited. And that's based on the statute. That's based on statutory rights. And then we get to the last issue, which is reimbursement. Also, it's two minutes. An award of reimbursement is supportable when the moving party shows that no gift was intended and when they can trace the funds from one estate to another. I believe, but I'm not certain, that opposing counsel said there was no evidence. However, there was evidence that the contributions to the marital estate was not a gift by Deborah's testimony, that she expected a full reimbursement of the monies that she contributed. I think probably the strongest evidence is much of the monies that she paid to the marital estate to improve these rental houses was done after Lee had left. I believe some of it was even after the dissolution had been filed in state court. I don't understand how anyone could think that a gift was intended to the marital estate once one of the parties leaves and moves in with their girlfriend. That doesn't make sense to me. What indeed happened was Lee had left. He had, as Your Honor had pointed out earlier, his job was basically to maintain the properties and prepare them for sale or for rent. That had stopped, and so my client had to expend her inheritance to maintain these properties and prepare them for sale. Some of them were fairly significantly damaged from prior renters and whatnot, and that's in the trial there as well. So you're saying that he ceased to make a gift to the marital estate. He did the maintenance while they were married. When did he stop? He stopped, I believe, when he left, which would be kind of when the marriage ended. While he was doing the maintenance, it was just like when he goes to Caterpillar and makes his income. It's part of the marital estate. My point was he's quit making gifts to the marital estate by not doing the maintenance any longer. That's correct, Your Honor. That's what I was trying to say. Similarly, symmetrically, she was making monetary contributions on these houses, and so you're saying they shouldn't be characterized as gifts either. That's correct, Your Honor. Okay. Yes. I'm sorry, I didn't understand. And so in the briefs, Murphy's office makes quite a bit to do about the spreadsheets that Deborah maintained throughout her expenditures as being demonstrative. I don't think that that's a statement that is supported. I believe that it was a summary of voluminous documents. Lynch actually protected the record in this case by saying that he provided the summary to opposing counsel a month prior, and he had an opportunity to object. And so it got in as substantive evidence, and the judge found that it was clear and convincing. As to what? As to the monies that Ms. Langenberg had contributed to the marital estate. It basically traced the monies from her estate to the marital estate, which is what's required in terms of tracing evidence, at least it is. That's all it goes to, but it doesn't answer the ultimate question of donative intent. Yes, Your Honor, I'm not suggesting that it does. The evidence, yes. Other than, perhaps, the idea that why would she have kept such detailed records? Taxes, maybe, but taxes, you don't need such detail. You can just say, I contributed this much to this property, and when it sells, you take it off your basis. Yeah, it's basis, that's why you keep those records. Right, but in these records, it actually showed the account where they came from, and then what property they went to. So, why would you need to show the IRS what account the money comes from? To prove that they were actually made. You've been in an audit? Perhaps, Your Honor. It's obviously not the strongest evidence, but it is, I would argue, some evidence. So, based on these arguments made and the briefs suggested, I would urge this court to affirm the ruling below as to the marital status of Kingsbury, the maintenance award, and the award of reimbursement. Thank you. Thank you, Mr. Smith. Mr. Valerius for rebuttal. Yes, Your Honor. On the matter of maintenance, our position is that income should have been imputed. Dara was employed the entire time the parties were together, from the marriage in 2002 until after separation in 2016. At the same job, earning substantial income. She was fired after they separated because she threatened another employee, behavior that is clearly frowned upon by society. The irony is, if she hadn't engaged in this bad behavior, she'd still have that job, and the maintenance outcome would be much different. Instead, she's now being rewarded with money for nothing while Lee pays the consequences for her misdeed. So, you're saying that she should have imputed income if it's $18 an hour. Noted $2,000 an hour work week, about $36,000. If that is what she was making, absolutely. It should have been imputed to whatever rate she was making at that time. Or? That should have been plugged into the formula. Correct. The guidelines. Instead, there was zero plugged in. Yes. Okay. That is our position. And so you would say that's a... What was the standard of review for the trial court? Discretion. Abuse of discretion. That was an abuse of discretion. Yes, Your Honor. Okay. Yes, I can cite the case law which enables the imputing of income, if you like. Generally, one of three conditions is present. A party's voluntarily unemployed. A party's attempting to avoid a support obligation. Or a party unreasonably failed to take advantage of an employment opportunity. I'd argue she fits two of those categories. She's voluntarily unemployed due to the threats that she made that got her fired. That was a voluntary act under her control. She should have known the consequences. She was at another job, though, for four days. IVP, plastics. She criticized the managers there. So she was only on board for four days. She was also at the Peoria Housing Authority. The story is, she knew that job was only going to last four months. So the question is, she had four months' notice. Why wasn't she looking for another job? She's able to work. Most people serious about finding employment would have made sure they had something to fall back on. So for that reason, I believe she also fits the third standard, which is unreasonably failed to take advantage of an employment opportunity. And then returning back to what you stated earlier about Donor to the Tent, regarding the tables showing the alleged expenses, I think you're right to consider the time frame. There was a period of time where he was making contributions, not in the form of monetary contributions, but labor. And that period extends into those tables. So the tables cover the entire year 2016, the entire year 2017. So there's a period where at least that should have been cut off, so that only a portion of those expenses were accepted. And such consideration just wasn't given. Could that account for the 20% that she was not awarded? That's not what the court articulated, I believe. The court was very specific about why it had reached that sum. And part of it is an offset for a credit card bill that was paid. I think that was $9,000. And then the rest of it was for a little bit of labor that he had invested. But there was no mention for the period of time in which they were still together, up until June of 2016. You said that as soon as he moved out, he quit. So as soon as the marriage broke down. So the reimbursement for the labor, that $12,000 or so, because there's $9,000 for the credit card, and then the chunk that the trial court sees as his contribution through work, through efforts. That would have happened prior to June 2016, correct? That I'm not sure about. I'm not sure if that's for a period of time before or after. But I think that if that were the case, this demands looking at the tables to make sure, well, what is the percentage of the overall total that was spent during that? That's a quarter of the time from January to June, of a period that's only two years long, and we're offsetting 20%. I believe that closer scrutiny was warranted. If we don't know the answers, then certainly closer scrutiny was warranted. Counsel, I have one more. What was the cross-examination about that? What was the questioning from your client's attorney about those expenses and where they came from, what the time frame was? It was more limited than we would like. I'm going to take any more questions. Okay, then. So we're out of time. Your Honor, thank you. Thank you very much. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible.  Thank you.